Michael Josef **BRODHEIM**, Petitioner,

v.

James **ROWLAND** and Ron
**Koenig**, Respondents.

No. C90–2892 TEH.

United States District Court,
N.D. California.

Nov. 6, 1991.

Michael J. Brodheim, pro se.

Bruce M. Slavin, Daniel E. Lungren, George H. Williamson, Cal. State Atty. General's Office, San Francisco, Cal., for respondents.

## ORDER

THELTON E. HENDERSON, Chief Judge.

This matter came before the Court on petitioner's amended petition for writ of habeas corpus. For the reasons stated below, the court GRANTS the petition with respect to his Equal Protection claims.

## I. BACKGROUND

California allows inmates to reduce their sentences by earning credits for good behavior and work as prescribed by the California Penal Code. For inmates who com-

mitted crimes before 1983, California Penal Code § 2931 (hereinafter "§ 2931") reduces sentences by one day for every two days served with good behavior and participation in prison programs. For inmates who committed crimes in or after 1983, § 2933 reduces sentences by one day for every day served working or participating in educational programs. California Penal Code § 2934 allows an inmate covered by § 2931 to waive irrevocably his right to § 2931 time credits and to be covered instead by the provisions of § 2933.

Petitioner Michael Josef Brodheim was convicted in Alameda County of first-degree murder under California Penal Code § 187. He is in Vacaville State Prison serving a sentence, imposed under Cal.Penal Code § 190 and § 1168(b), of 25 years to life. Because the California Department of Corrections received him in May 1982, he qualified for reducing his sentence under the guidelines of § 2931. Brodheim signed a § 2934 waiver on January 3, 1983, thereby becoming subject to the provisions of § 2933.

In 1987, however, the Attorney General issued an advisory opinion in which he held that state prisoners convicted under § 190 (murder) are ineligible for § 2933 credits. 70 Op.Cal.Att'y Gen. 49 (1987). The Attorney General began by explaining that prisoners serving sentences of 15 or 25 years to life or life with possibility of parole are ineligible for § 2933 credits, because § 2933 states that its application is limited to those persons sentenced under § 1170, and prisoners serving sentences of 15 or 25 years to life or life with possibility of parole are sentenced under § 1168(b). *Id.* at 50–52. Thus, if § 2933 credits are to apply to such persons, it must be from some statute other than § 2933. *Id.* at 52.

The Attorney General then held that some prisoners serving such sentences, though not § 190 prisoners, may in fact receive § 2933 credits. Sections 190, 217.1(b) (attempted assassination), and 667.7 (certain habitual offenders) all state that the provisions of Article 2.5 (commencing with § 2930) of Chapter 7 of Title 1 of Part 3 of the Penal Code shall apply to reduce

the term. This does not necessarily mean that each of these sections refers to § 2933, because § 2933 was not enacted until 1982. *Id.* at 53. Section 190 was enacted in 1978, when Article 2.5 did not include § 2933; therefore, § 190 does not refer to § 2933. *Id.* at 53–56. Section 217.1(b), however, was enacted in 1983, after § 2933 had become part of Article 2.5, so § 217.1(b) does refer to § 2933. *Id.* at 56. As for § 667.7, though it was enacted in 1981, it was amended in 1986, after § 2933 had become part of Article 2.5, so now it, too, refers to § 2933. *Id.* at 56–57. Thus, § 217.1(b) (attempted assassins) and § 667.7 (habitual offenders) prisoners may receive § 2933 credits, and § 190 prisoners may not.

The California Department of Corrections implemented the Attorney General's opinion by denying past and future § 2933 credits to affected inmates. The California Appellate Court, while upholding the Attorney General's opinion, required credits earned before the opinion to be restored. *In re Monigold,* 205 Cal.App.3d 1224, 253 Cal.Rptr. 120 (1988).

In June 1988, the voters approved Proposition 67, which modified § 190 by adding a section. The modification did not change the wording of former § 190, now § 190(a), which still stated that Article 2.5 shall apply to reduce the term. The California Appellate Court later ruled that the passage of Proposition 67 had no effect on the entitlement of § 190 prisoners to § 2933 worktime credits. *In re Oluwa,* 207 Cal. App.3d 439, 446–47, 255 Cal.Rptr. 35 (1989).

Petitioner challenged the denial of his opportunity to earn credits under § 2933 and, having exhausted his state judicial remedies, properly brought his claim in this Court against James Rowland, Director of the California Department of Corrections, and Ron Koenig, Chairman of the California Board of Prison Terms. Petitioner claimed that the present policy of denying § 2933 credits to convicted murders, but not to would-be assassins or habitual offenders, violated his rights to Due Process and Equal Protection.

This Court found that petitioner did not have a liberty interest in receiving § 2933 credits, and dismissed his Due Process Claims. *See* February 7, 1991 Order, April 18, 1991 Order and July 18, 1991 Order. This Court also found that petitioner's Equal Protection claim was cognizable under rational-basis scrutiny and ordered supplemental briefing from the State on the Equal Protection claim.

## II. DISCUSSION

Petitioner challenges the denial to § 190 prisoners, but not to § 217.1(b) and § 667.7 prisoners, of the opportunity to earn § 2933 credits on the ground that it is a violation of his right to Equal Protection. The Court has already found that no basis exists for applying heightened scrutiny to Brodheim's classification as a murderer, because no fundamental right is at stake and the classification is not invidious. *See* February 7, 1991 Order. Thus, the statute need have only a rational basis. *Kalka v. Vasquez,* 867 F.2d 546, 547 (9th Cir.1989). That is, it must bear a rational relationship to a legitimate governmental purpose. *Bunyan v. Camacho,* 770 F.2d 773, 774 (9th Cir.1985).

The State argues that petitioner is not similarly situated with failed assassins and habitual offenders and that a rational basis exists for treating him differently; consequently, his right to Equal Protection has not been violated.

■ As to would-be assassins, this argument clearly has merit. Equal protection does not require that things that are different in fact be treated the same in law. *Michael M. v. Superior Court of Sonoma County,* 450 U.S. 464, 469, 101 S.Ct. 1200, 1204, 67 L.Ed.2d 437 (1981). Dissimilar systems of parole release, like dissimilar sentencing systems for different crimes, do not deny a prisoner equal protection of the laws if the distinctions are justified by a legitimate state interest and if the challenged system bears a reasonable relationship to that interest. *McQuillion v. Rushen,* 639 F.Supp. 420, 424 (N.D.Cal.1986). Attempted assassination and first-degree murder are different crimes and carry different sentences, and the State argues that the people of California, by denying murderers § 2933 credits but making these credits available to would-be assassins, have expressed their intention to make convicted murderers serve a sentence that exceeds the minimum imposed for different offenses considered less serious than murder. Respondent's Answer to Petition for Writ of Habeas Corpus and Memorandum of Points and Authorities, at 5–8 (hereinafter, "Answer"). The would-be assassin and the successful murderer have undoubtedly committed different crimes. The State has a legitimate interest in denying its serious offenders early parole, and this interest is reasonably related to a system that qualifies earlier for parole criminals who have not killed someone than criminals who have killed someone in cold blood.

■ However, the State's argument is not persuasive as to certain habitual offenders. Section 667.7 provides in part:

(a) Any person convicted of a felony in which the person inflicted great bodily injury as provided in Section 12022.7, or personally used force which was likely to produce great bodily injury, who has served two or more prior separate terms as defined in Section 667.5 for the crime of [list of qualifying crimes omitted] is a habitual offender and shall be punished as follows:

(1) A person who served two prior separate prison terms shall be punished by imprisonment in the state prison for life and shall not be eligible for release on parole for 20 years, or the term determined by the court pursuant to Section 1170 for the underlying conviction, including any enhancement applicable under Chapter 4.5 (commencing with Section 1170) of Title 7 of Part 2, or any period prescribed by Section 190 or 3046, whichever is greatest. *The provisions of Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3 shall apply to reduce any minimum term in a state prison imposed pursuant to this section, but the person shall not otherwise be released on parole prior to that time.*

Cal.Penal Code § 667.7(a)(1) (emphasis added). Petitioner argues that some habitual offenders would not have committed different crimes from first-degree murderers, because some habitual offenders could be first-degree murderers. That is, first-degree murderers will often have personally used force which was likely to produce great bodily injury, and they may well have served two terms for other appropriate crimes; and such prisoners must be classified habitual offenders under the terms of § 667.7.

Thus, it seems that a murderer who has been convicted twice before of violent crimes is better off than a murderer new to the prison system. For example, petitioner was sentenced to 25 years to life under § 190 and, as discussed above, may therefore not earn § 2933 credits. If he had qualified as a habitual offender, he would have been punished under § 667.7 for the same term, i.e., a life term with parole eligibility in the period prescribed by § 190, in this case 25 years. And, because as a habitual offender he would have been sentenced under § 667.7, he would have been able to earn § 2933 credits, because, as discussed above, the Attorney General's opinion found that amended § 667.7 refers to § 2933. Petitioner's argument is compelling; allowing the hardened first-degree murderer to earn § 2933 credits, while denying them to his callow counterpart, is irrational.

■ The State responds that *all* prisoners convicted of murder in California are sentenced under § 190, and that § 667.7 can lengthen a minimum term but can never shorten that sentence. Respondent's Supplemental Memorandum at 3 (hereinafter, "Supp. Mem."). If the State means to argue that § 190 prisoners cannot be sentenced under § 677.7, it is mistaken. "Section 677.7 creates an independent, self-contained sentencing scheme for certain violent habitual offenders." *People v. Victor*, 227 Cal.App.3d 518, 522, 278 Cal.Rptr. 7 (5th Dist.1991). The sentence authorized by § 677.7 is not an enhancement; "it is imposed in lieu of, not added to, a base sentence for a substantive crime." *Id.* at

524 n. 3, 278 Cal.Rptr. 7; *see also People v. Decker*, 199 Cal.App.3d 694, 697, 245 Cal. Rptr. 40 (1988). Indeed, "where a defendant comes within the terms of § 677.7, application of the statute is mandatory." *People v. Tuggle*, 232 Cal.App.3d 147, 283 Cal.Rptr. 422, 428 n. 11 (Cal.App. 1 Dist. 1991). Furthermore, § 667.7 itself notes § 190 as prescribing one of the potential parole dates available to prisoners who, apparently, would have been sentenced under § 190 had they not met the definition of "habitual offenders" and thus been sentenced under § 667.7. Thus, a habitual offender whose latest crime is murder must be sentenced under § 667.7, and may not, as the State argues, but sentenced under § 190.

■ If the State means to argue that a § 190 prisoner sentenced under § 677.7 is nonetheless eligible for parole only under the conditions set by § 190, it is also wrong. The State argues that "[t]he key phrase in section 667.7 is the one specifying that a habitual criminal sentenced under that statute will not be eligible for parole for 20 years or the term set by the court under section 1170 or the period prescribed by section 190, *'whichever is greatest.'*" Supp.Mem. at 3. In its support, the State cites *People v. Gonzalez*, 201 Cal.App.3d 811, 814, 247 Cal.Rptr. 501 (2d Dist.1988), and argues that "it is the minimum possible release date which may vary under the statutes, and it would be inconsistent with the legislative intent behind a recidivist statute to interpret it as lessening the minimum term that would otherwise be served." Supp.Mem. at 4.

■ The *Gonzalez* court found that the phrase "the greatest" in § 667.7 refers to the greatest of the several alternative parole dates prescribed in the other sentencing sections specified therein, not to the greatest of those sentences per se. The court explained that, while the greatest period a prisoner could serve under any life sentence is always identical regardless of whether that sentence is derived from § 667.7, § 190, or § 3046 (ie, life), only a prisoner's minimum possible release date could vary from a high of 25 years (§ 190)

to a low of 7 years (§ 3046). *Id.* at 815, 247 Cal.Rptr. 501. Furthermore, noted the court, the last words of § 667.7, regarding parole eligibility, are convincing evidence that it is from among the potentially available parole dates that a court is required to select "the greatest". *Id.*

The State interprets this opinion to mean that a murderer sentenced under § 667.7 would be considered for parole no earlier than a murderer sentenced under § 190. Apparently, the State reasons that "the greatest" parole date is not merely the date prescribed under the other sentencing sections specified in § 667.7, but rather the date prescribed under the other sentencing sections *as reduced by the credits available under those sections.* Supp.Mem. at 4.

But such reasoning entirely negates the Attorney General's opinion, is contrary to the express language of the statute, and is contrary to the court's reasoning in *Gonzalez.* First, if the State were correct, the sentence in § 667.7(a)(1) granting prisoners the benefit of the provisions of Article 2.5 would have no meaning and would apply to no § 667.7 prisoner. Rather, prisoners sentenced under § 667.7 would always look to the parole and credit provisions of their underlying, listed offenses to determine their parole dates. However, the Attorney General has expressly opined that § 2933 credits *are* available to § 667.7 prisoners. 70 Op.Cal. Att'y Gen. at 56–57. Since these credits are available, they must act to reduce a prisoner whose minimum release date is 25 years.

■ Second, the State's argument is contrary to the express words of § 667.7. Section 667.7 simply does not say that the court is to choose from among the greatest possible parole dates *as reduced by available credits.* It states only that the court is to choose the greatest parole date from among those options applicable to the prisoner. §§ 1170, 190 and 3046 all state minimum parole dates, any one of which may be applicable to the prisoner via his underlying offense. The statute goes on to state that having chosen that date, "the provisions of Article 2.5 ... of Chapter 7 of Title 1 of Part 3 [which includes § 2933] shall apply to reduce *any* minimum term in a state prison imposed pursuant to this section...." (emphasis added). Were the state's construction accurate, this sentence would have no meaning; court would be required to ignore the express language of the statute because the only relevant provisions regarding available credits would be found in the underlying statutes themselves.[1]

Finally, even the *Gonzalez* opinion does not suggest that "the greatest" parole date could not be reduced by § 2933 credits. To the contrary, the court stated that "the concluding pronouncement in section 667.7 regarding the applicability of good behavior and participation credits to parole eligibility" was one of the factors which convinced it that "it is from among the potentially available parole dates [and not the potentially available overall *sentences*] that a court is required to select the 'greatest.'" 201 Cal.App.3d at 815, 247 Cal.Rptr. 501. Further, the *Gonzalez* court twice referred to the possible release of the prisoner in that case after *half* of his sentence had been served, *id.* at 813, 814, 247 Cal. Rptr. 501, thereby suggesting that the one-for-one credits of § 2933 would indeed be available.[2]

As a final argument, the State asserts that a murderer sentenced under § 667.7

---

1. However, it is a basic rule of statutory construction that significance is to be attached to every word, phrase and sentence, and that the courts should avoid constructions which render phrases of the statute meaningless. *Tos v. Mayfair Packing Co.,* 160 Cal.App.3d 67, 75, 206 Cal.Rptr. 459 (1984).

2. The state's analysis basically allows the state to substitute the sentencing provisions of the underlying offense for some prisoners sentenced as habitual offenders under § 667.7.

However, as noted *supra* at 8, § 667.7's sentence is imposed *in lieu of* that underlying sentence. Regardless of the prisoner's underlying offense, if he meets the definition of "habitual offender" he is sentenced under § 667.7 and *not* under the underlying offense statute. It would be anomalous indeed for the state to undo what the legislature has done in creating § 667.7 by imposing instead the very sentence which the legislature deemed insufficient.

could not receive a lesser sentence than a murderer sentenced under § 190 because, regardless of the Legislature's intent in enacting § 667.7, the voter initiative that enacted § 190 must take precedence and a person convicted of first-degree murder may not receive § 2933 credits. Supp. Mem. at 5. The error in this argument is that the voters' intention to deny first-degree murderers § 2933 credits applied only to prisoners sentenced under § 190, not to first-degree murderers sentenced under § 667.7; as to these prisoners, the voters' intention was apparently very different. The only issue is whether this intention is rational.

The State, however, having had numerous opportunities to put one forth, has yet to suggest any rational relationship between a legitimate State interest and classifying § 190 murderers differently from § 667.7 murderers in such a way as to provide *shorter* sentences for § 667.7 murderers, and the Court is unable to imagine what such a justification could possibly be. Thus, it is possible that, as to § 2933 credits, a habitual offender whose latest offense is first-degree murder could be better placed than a first-time offender convicted of first-degree murder. This Court is of the opinion that such an outcome is not rationally related to any legitimate government objective, and therefore that the present allocation of worktime credits violates Equal Protection.

## III. CONCLUSION

For the foregoing reasons, and good cause appearing, IT IS HEREBY ORDERED that:

1. The writ of habeas corpus is GRANTED.

2. Defendants are directed to credit petitioner with the worktime credits he has accumulated during the time that he has been enrolled in a qualifying § 2933 program from March 24, 1987, the date of the Attorney General's Opinion, to the date of this Order, and to recalculate his minimum eligible parole date and initial parole hearing date accordingly.

3. Defendants are further directed to credit petitioner with any worktime credits he earns in a qualifying § 2933 program from the date of this Order forward.

IT IS SO ORDERED.